## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WENDELL WALLACE,** | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :     **CIVIL ACTION NO. 24-CV-5712** |
| | : |
| **C/O MCPHERSON, *et al.*** | : |
| **Defendants.** | : |

### MEMORANDUM

**SCOTT, J.**                                                                        **JANUARY** $\cancel{6}$ **, 2025**

*Pro se* Plaintiff Wendell Wallace, an incarcerated individual currently housed at SCI

Greene, asserts constitutional claims pursuant to 42 U.S.C. § 1983 after he was assaulted by an

inmate at the Philadelphia Industrial Correctional Center ("PICC"), allegedly upon the order of a

correctional officer, and then later punished for the incident. Wallace also seeks leave to proceed

*in forma pauperis*. For the following reasons, the Court will grant Wallace leave to proceed *in

forma pauperis* and dismiss a portion of his Complaint for failure to state a claim pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii). Wallace will have an opportunity to file an amended complaint to

reallege the claims that were dismissed without prejudice or, alternatively, to proceed on the

claims that pass statutory screening.

### I.    FACTUAL ALLEGATIONS[1]

Wallace names seven Defendants in his Complaint: C/O McPherson, Sgt Black, Major

---

[1] Wallace used the form complaint available to unrepresented litigants to file his claims
and included additional handwritten pages. (ECF No. 2.) The Court considers the entire
submission to constitute the Complaint, to which the Court adopts the sequential pagination
assigned by the CM/ECF docketing system. The factual allegations set forth in this
Memorandum are taken from Wallace's Complaint. Where the Court quotes from the
Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

Benner, Commissioner Blanche Carney, C/O Henry, "Hearing Examiner," and C/O Green. (Compl. at 1-4.) Wallace was a pretrial detainee during the events giving rise to his claims. (*Id.* at 9.) He alleges that on November 16, 2022, at PICC, he was assaulted "and knocked out" by his cellmate inside their shared cell. (*Id.* at 5, 10.) His cellmate had just been escorted to their cell by Defendant C/O McPherson. (*Id.* at 5.) Wallace was taken to the hospital where he received stitches in his lip and was treated for other injuries. (*Id.*) When he returned to PICC from the hospital, Wallace's cellmate shared with him that McPherson gave the cellmate a cellphone "as payment" to assault Wallace. (*Id.* at 5-6, 8.) Wallace alleges that approximately two to three weeks prior to the "hit," McPherson threatened him. (*Id.* at 5-6.) When McPherson and C/O Rosa came to Wallace's cell to take him and his cellmate to recreation, McPherson "out of nowhere" said to Wallace, "if it was a fight to the death of you and me, would you win or me?" (*Id.* at 6.) Wallace states that he was caught "off guard " by McPherson's statements. (*Id.*)

After the assault, numerous inmates told Wallace that during the alleged "ruthless assault," McPherson blocked the door to Wallace's cell to prevent others from seeing inside but himself watched the assault and "kept saying 'keep going, keep going'" to Wallace's cellmate. (*Id.*) Defendant C/O Henry was also present during the assault. (*Id.*) Henry opened the door to remove Wallace's cellmate after McPherson "tried to leave" the scene of the assault. (*Id.*) After the assault, Wallace was "written up" for a fight. (*Id.* at 7.) At the subsequent disciplinary hearing, Wallace informed the Hearing Examiner that he never received the write up for the fighting charge. (*Id.*) The Hearing Examiner said that Sgt. Black said he gave Wallace the write up, which according to Wallace, was "a lie." (*Id.*) The Hearing Examiner gave Wallace 30 days segregation as punishment, which, according to Wallace, is a greater punishment than typically

2

given for fighting. (*Id.*) Wallace appealed the Hearing Examiner's decision. (*Id.*) He also

wrote a grievance about the assault, and gave the grievance to C/O Green. (*Id.*) Wallace never

received anything in response to the grievance. (*Id.*) However, a month after he filed the

grievance, "out of nowhere," Wallace was moved to the "supermax hole" at the Curran-

Fromhold Correctional Facility ("CFCF"). (*Id.* at 8, 10, 12.) Wallace received no write up or

explanation for the move to supermax at CFCF. (*Id.* at 8.) Wallace asserts that he was at

supermax at CFCF for eleven months and that during his time there, the captains, lieutenants,

and correctional officers "tortured" him. (*Id.*) Wallace wrote about the events on an electric

tablet, believing the was filing grievances to which he would receive responses. (*Id.*) However,

his grievances were ignored, and the tablet was erased by staff. (*Id.*)

Based on these allegations, Wallace asserts constitutional claims under the First and

Fourteenth Amendments.[2] (*Id.* at 3.) For relief, he seeks money damages. (*Id.* at 10.)[3]

---

[2] Wallace also purports to assert claims under the Fourth, Fifth, Sixth, and Ninth
Amendments. The Fourth Amendment protects individuals from unreasonable searches and
seizures. U.S. Const. amend. IV. The Fifth Amendment "permits a person to refuse to testify
against himself at a criminal trial in which he is a defendant" and "also 'privileges him not to
answer official questions put to him in any other proceeding, civil or criminal, formal or
informal, where the answers might incriminate him in future criminal proceedings.'" *Vega v.
Tekoh*, 597 U.S. 134, 141 (2022) (citing *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct.
1136, 79 L.Ed.2d 409 (1984)); *see also* U.S. Const. amend. V. The Sixth Amendment describes
certain protections provided to the accused in criminal prosecutions. U.S. Const. amend. VI.
The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall
not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.
Wallace asserts no facts that implicate these constitutional provisions. Thus any claims based on
the Fourth, Fifth, Sixth, and Ninth Amendments will be dismissed. Additionally, since Wallace
was a pretrial detainee at the time of events giving rise to his claims, there is also no basis for a
claim under the Eighth Amendment, which applies to convicted and sentenced prisoners. *See
Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

[3] Wallace also requests that McPherson be terminated from his employment. (Compl. at
10.) However, the Court is not empowered to grant such relief as a remedy under § 1983.
*Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *2 (E.D. Pa.
Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state

3

## II.    STANDARD OF REVIEW

The Court grants Wallace leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Wallace is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

---

employee") (citing *Teal v. Moody*, No. 15-1402, 2019 WL 6702405, at *1 (M.D. Fla. July 10, 2019) ("[T]o the extent Teal suggests that this Court reprimand the Defendants and/or terminate their employment, this Court does not have the authority to reprimand state employees and/or terminate their employment."); *Theriot v. Woods*, No. 09-199, 2010 WL 623684, at *4-5 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]").

[4] Because Wallace is granted *in forma pauperis* status, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

### III.   DISCUSSION

Wallace brings First and Fourteenth Amendment claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

#### A.   Official Capacity Claims

Wallace asserts claims against Defendants in both their official as well as their and individual capacities. (*See* Compl. at 2-3.) Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them, here the City of Philadelphia. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Nonetheless, a municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." (emphasis in original)). Rather, to plead a basis for municipal liability under § 1983, a plaintiff must allege

that the municipality's policy or custom caused the violation of his constitutional rights. *See*

*Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what

exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir.

2009). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff

must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of*

*Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d

1199, 1213 (3d Cir. 1996)).

Wallace has not alleged any facts that support official capacity claims against the named

Defendants.  He has not alleged a municipal policy or custom with respect to the alleged

constitutional violations or that any such policy or custom caused the alleged constitutional

violation.  Accordingly, the official capacity claims are not plausible and will be dismissed.

### B.    Claims against C/O McPherson and C/O Henry

The Court understands Wallace to assert claims against C/O McPherson and C/O Henry

based on their involvement in the assault on Wallace by his cellmate.  Specifically, Wallace

appears to assert a failure to protect claim against McPherson and a failure to intervene claim

against Henry.  Because Wallace was a pretrial detainee when the underlying incidents occurred,

his claims are governed by the Due Process Clause of the Fourteenth Amendment. *Hubbard v.*

*Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005) (holding that the Due Process Clause of the

Fourteenth Amendment governs claims brought by pretrial detainees).[5]

---

[5] The rights afforded pretrial detainees under the Due Process Clause are at least as great
as those afforded by the Eighth Amendment. *See Simmons v. City of Philadelphia*, 947 F.2d
1042, 1067 (3d Cir. 1991).  Therefore, courts analyzing cases by pretrial detainees apply the
same standard of deliberate indifference applied to the Eighth Amendment cases. *Id*.

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  To state a plausible failure to protect claim, Wallace must allege that the conditions in which he was incarcerated posed a substantial risk of serious harm, and that prison officials acted with deliberate indifference to that substantial risk of serious harm. *See id.*; *Hamilton*, 117 F.3d at 746; *see also Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee); *Peay v. Fisher*, 763 F. App'x 248, 251 (3d Cir. 2019) (applying deliberate indifference standard to failure to protect claim based on prison officials directing two inmates to attack another inmate); *McClain v. Carney*, No. 23-4012, 2024 WL 113761, at *10 (E.D. Pa. Jan. 10, 2024) ("Anyone who encourages other inmates to harm a prisoner without some penological purpose causes risk to the prisoner's safety and does so knowingly" (citing *Smolen v. Brown*, No. 18-7621, 2023 WL 6199094, at *9 (S.D.N.Y. Sept. 22, 2023)).

Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).  For his claim to be plausible, Wallace must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id.* at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id.* at 125. A prison officer's failure to intervene may also serve as a basis for liability under § 1983 if the officer "had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651.  Wallace alleges that McPherson

threatened him and then a few weeks later gave Wallace's cellmate a cellphone to assault Wallace. Wallace also alleges that McPherson watched the assault and encouraged it to continue. Wallace has stated a plausible failure to protect claim against McPherson. This claim passes statutory screening and may proceed to service.

In addition, "a corrections officer's failure to intervene in a beating can be the basis of liability for [a] . . . violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "[T]he duration of the incident is key to determining whether there was a reasonable opportunity" to intervene, and an incident's "brevity may defeat a failure-to-intervene claim." *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (cleaned up) (citing *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)). Yet an incident's duration is generally a factual rather than legal issue, particularly "where the event unfolds in multiple stages." *Id.* (citing *Mensinger*, 293 F.3d at 644, 650); *see also Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) ("Whether the officer had a realistic opportunity to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." (internal quotation marks and citation omitted)). Wallace alleges that Henry was present for and observed Wallace being assaulted by his cellmate. Based on the facts, it can be inferred that Henry also observed McPherson encouraging the assault and that Henry did not try to intervene to stop it until McPherson tried to walk away and until after Wallace had suffered significant injuries. Based on these allegations, Wallace has stated a plausible failure to intervene claim against Henry. This claim also passes statutory screening and may proceed.

### C.    Claims against Sgt Black and the Hearing Examiner

Wallace also asserts claims against Sgt Black and the Hearing Examiner in connection

with the disciplinary action and hearing he received after he was assaulted. Wallace alleges that Black told the Hearing Examiner that he provided Wallace a copy of the "write up" but that this was a lie because Wallace never received it. He also alleges that the Hearing Examiner gave him thirty days of disciplinary segregation for fighting even though Wallace was the one assaulted and even though fighting generally receives only seven or fifteen days of segregation as punishment. (*See* Compl. at 7.) The Court understands Wallace to assert Fourteenth Amendment due process claims against Black and the Hearing Examiner.

To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that the conditions of his confinement amount to punishment. *Bell*, 441 U.S. at 538; *Camps v. Giorla*, 843 F. App' x 450, 452 (3d Cir. 2021) (*per curiam*). In that regard, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement." *Singleton v.*

9

*Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian*, 696 F.3d at 375).

With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Those protections contemplate that a disciplinary hearing will be held, "includ[ing] the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson*, 495 F.3d at 70. "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Wallace alleges that he never received a written notice of the charges and that he only learned that about the existence of the "write up" during the disciplinary hearing. The Hearing Examiner told Wallace that Black represented that he gave him the write up. However, Wallace asserts that this was a "lie" and that Wallace never received a write-up. (Compl. at 7.) Wallace also alleges that even though he told the Hearing Examiner that he was assaulted, the Hearing Examiner nevertheless found him guilty of fighting and gave him a greater punishment typically

10

given for fighting charges.  Wallace's allegations state a plausible due process claim against Black and the Hearing Examiner.

### D.   Claims against C/O Green

Wallace alleges that he gave C/O Green a grievance about the assault by his cellmate but that he never received a response to his grievance.  To the extent that Wallace asserts a claim against Green based on Green's involvement in handling his grievance, the claim must be dismissed.  Any § 1983 claim based on the denial of access to the grievance process fails because "[p]risoners do not have a constitutional right to prison grievance procedures."  *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (stating that the defendants' "alleged obstruction of prison grievance procedures does not give rise to an independent cause of action"); *see also Washington v. Hoffmann*, No. 16-0259, 2017 WL 4508859, at *4 (W.D. Pa. Sept. 25, 2017), *report and recommendation adopted*, 2017 WL 4508863 (W.D. Pa. Oct. 6, 2017) (dismissing plaintiff's claim that he was denied access to the grievance process when he was not provided a grievance form).  Accordingly, even if it can be inferred that Green did not submit the grievance on Wallace's behalf, the claim must be dismissed with prejudice.

Wallace also alleges that after he submitted the grievance to Green, he was moved to the "Supermax hole" at CFCF.[6]  To the extent that Wallace intended to assert a First Amendment

---

[6] Wallace also alleges that at some point his mail, radio, and cosmetics went "missing" after his transfer from the E-block. (Compl. at 7-8.) Wallace does not state whether this occurred before or after he gave a grievance to Green and whether Green was involved specifically in the disappearance of his personal property. However, even if he had, a prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property because he has adequate postdeprivation remedies available to him. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an

11

retaliation claim against Green based on his transfer, the claim is not plausible as pled. To assert
a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in
constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person
of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally
protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v.
Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).
The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct
may establish a causal link between the two for purposes of establishing motivation. *See Watson
v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). A prisoner's filing of a grievance constitutes
constitutionally protected conduct. *See id.* Any First Amendment retaliation claim asserted
against Green is undeveloped as pled as Wallace has not alleged sufficient facts to support a
plausible inference that giving his grievance to Green was a substantial factor for his transfer to
the supermax facility at CFCF. Wallace does not allege that Green was involved in the decision
to transfer him to the Supermax facility at CFCF. Nor does Wallace allege that Green even had
knowledge that Wallace was transferred. Wallace only alleges that the transfer occurred a month
after he submitted the grievance to Green. As Wallace does not allege a plausible First
Amendment retaliation claim against Green, the claim must be dismissed.

### E.   Claims against Major Brenner

Aside from naming Major Brenner as a Defendant in the Complaint, Wallace alleges no
specific facts about Brenner or his involvement in the conduct giving rise to his claims. As noted
above, an individual must be personally involved in violating a plaintiff's rights to be liable

---

adequate remedy for a willful deprivation of property); *see also Tillman v. Lebanon Cty. Corr.
Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides
adequate postdeprivation remedy to satisfy due process).

under § 1983. *See Rode*, 845 F.2d at 1207. Accordingly the claims against Major Brenner will be dismissed.

### F.   Claims against Blanche Carney

Wallace names former Philadelphia Prisons Commissioner Blanche Carney as a Defendant and alleges that after he was transferred to the supermax facility at CFCF, he wrote grievances "to the highest level – center office P.D.P Commissioner Blanche Carney"—both in writing and on the tablet he used while at the supermax facility—but he never received a response. (Compl. at 8, 12.) His grievances concerned his assault by his cellmate, McPherson's involvement in directing the assault, Wallace's disciplinary hearing and how he did not receive the write-up prior to the hearing, his receipt of punishment for being assaulted, and his transfer to the "supermax hole" without explanation or justification. (*Id.* at 12.) Wallace alleges no other facts about Carney in his Complaint. To the extent that Carney is named simply due to her high-ranking position, this is not sufficient to state a plausible claim. Supervisors are not liable for alleged constitutional violations committed by their subordinates simply because they employ them. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (holding that liability under § 1983 cannot be predicated on a *respondeat superior* basis); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."[7] *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

---

[7] There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

13

The Court understands Wallace to allege that Carney was personally involved in, and thus liable for, the alleged constitutional violations about which Wallace complained in his grievances directed to her. However, a prison official's participation in the grievance process, or the official's failure to take action in response to a prisoner's grievance, is, without more, an insufficient basis upon which to base those officials' personal involvement in the underlying violations. *See Murray v. McCoy*, No. 23-2582, 2024 WL 1328231, at \*3 (3d Cir. Mar. 28, 2024) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement" (citing cases)); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at \*4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals"); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances). Accordingly, Wallace has failed

---

First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). Second, a supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Wallace's Complaint does not include allegations that would plausibly support a supervisory liability claim against Carney.

14

to allege facts to plausibly allege Carney's personal involvement in his alleged constitutional harm. Wallace's claims against Carney must therefore be dismissed.

### G.    Claims based on Eleven-Month Stay in Disciplinary Segregation

Wallace asserts due process claims based on his transfer to the supermax facility at CFCF without any write-up or other explanation, and without any justification. He also appears to assert Fourteenth Amendment claims based on the conditions he endured during his eleven month stay at the supermax facility, including claims related to correctional officers' assaults, their interference with his legal mail, and their allowing inmates into his cell to "put feces on all [his] mail and property." (Compl. at 12.) The allegations are undeveloped, and more importantly, are not tied to any of the named Defendants.[8] *See Rode*, 845 F.2d at 1207. Accordingly, any due process and conditions of confinement claims as pled based on Wallace's transfer to and the conditions at the supermax facility at CFCF will be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Wallace leave to proceed *in forma pauperis* and dismiss his Complaint in part without prejudice. Wallace's failure to protect claim against C/O McPherson, failure to intervene claim against C/O Henry, and due process claims against Sgt Black and the Hearing Examiner in those Defendants' individual capacity pass statutory screening and may proceed to service. The balance of Wallace's Complaint is dismissed without prejudice. Wallace may file an amended complaint in the event he can allege facts to address the defects noted by the Court as to his dismissed claims against Defendants Major Benner, Commissioner Blanche Carney, and C/O Green, his claims against the

---

[8] Wallace alleges that Lt. Hilty was involved in permitting an inmate into his cell to spread feces on his property. However, Lt. Hilty is not named as a Defendant in this matter.

Defendants in their official capacities, and his claims in connection with his stay at the supermax facility at CFCF. In the alternative, Wallace may elect to proceed on his remaining claims against McPherson, Henry, Back and the Hearing Examiner. An appropriate order follows, which provides further instructions on options for proceeding.

**BY THE COURT:**

_____
**KAI N. SCOTT, J.**

16